# Exhibit P-2
## Proposed First Amended Complaint
## (redline)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Christina Romano, | : Civil Action |
| | : |
| Plaintiff | : No. 1:25-cv-13094-CPO-MJS |
| | : |
| v. | : Jury Trial Demanded |
| | : |
| Thomas Jefferson University Hospitals, Inc. d/b/a Jefferson Health – Eastern Region and Kennedy University Hospital, Inc. d/b/a Jefferson Health New Jersey, | : : : : |
| | : |
| Defendants | : |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Christina Romano ("Romano") brings this action against Defendant Thomas Jefferson University Hospitals, Inc. d/b/a Jefferson Health – Eastern Region ("TJUH" or the "Enterprise") and Kennedy University Hospital, Inc. d/b/a Jefferson Health New Jersey ("JHNJ") (collectively, "Defendants") for (1) retaliation under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*; (2) disability discrimination and retaliation under the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 *et seq.*; and (3) interference and discrimination/retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

**Deleted:** Jefferson Health

**Deleted:** or "Defendant"

1

**Parties**

1. Romano is an adult individual residing in Haddon Township, New Jersey.

2. TJUH is a non-profit organization with business operations throughout Pennsylvania and southern New Jersey.

3. JHNJ is a non-profit organization with business operations in southern New Jersey.

4. At all relevant times, TJUH and JHNJ acted as joint employers of Romano within the meaning of CEPA, the LAD, and the FMLA.

5. At all relevant times, Defendants acted by and through their authorized agents, servants, and/or employees, acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

**Jurisdiction and Venue**

6. Venue is proper in this Court because the acts giving rise to the claims primarily occurred in Camden County, New Jersey.

7. Defendants employed Romano primarily in Camden County, New Jersey and the acts of discrimination, retaliation, and constructive discharge occurred primarily in Camden County, New Jersey.

2

**Factual Allegations**

**Romano's Employment with Defendants**

8. In January 2012, Romano began her career with Kennedy University Hospital as a per diem Guest Services Coordinator in Cherry Hill, New Jersey.

9. In August 2014, Romano was promoted to Director of Guest Relations in Cherry Hill, New Jersey.

10. In 2017, TJUH acquired Kennedy University Hospital. Romano continued her employment seamlessly as part of the Jefferson Health Enterprise.

11. In October 2017, Romano was promoted to Director Service Excellence & Guest Relations in Cherry Hill, New Jersey.

12. In December 2019, Romano was promoted to Director Service Excellence & Guest Relations for Cherry Hill and Washington Township, New Jersey.

13. In September 2020, Romano was promoted to Regional Director Service Excellence – Inpatient Region.

14. As Regional Director Service Excellence, Romano oversaw multiple departments for three TJUH/JHNJ hospitals in New Jersey.

15. At all relevant times, Romano was qualified for the Regional Director Service Excellence position based on her work experience and because she exceeded Defendants' reasonable performance expectations for the position.

Deleted: 7
Deleted: Jefferson
Deleted: Health
Deleted: 8
Deleted: 9
Deleted: 0
Deleted: 1
Deleted: 2
Deleted: Jefferson Health
Deleted: 3
Deleted: Jefferson Health's

3

### Romano Engages in CEPA-protected Activity

16. In 2022, Romano raised compliance concerns about inappropriate language and vendor relationships in a grant application to Defendants' Office of Legal Affairs.

17. Romano reasonably believed that the inappropriate language and vendor relationships in a grant application violated a law, or a rule or regulation promulgated pursuant to law.

18. Defendants' Office of Legal Affairs agreed with Romano's concerns.

19. Shortly after, TJUH's Chief Experience Officer Dwight McBee ("McBee") retaliated by removing Romano from the grant process, stating during a meeting, "Christina Romano is OUT."

20. Romano subsequently experienced a series of retaliatory acts including exclusion from meetings, removal from projects, and threats related to an internal application platform known as "Empower You."

21. In Fall 2023, following multiple leadership departures, Romano's reporting structure was changed without proper communication.

22. Romano also observed text messages between leadership, including Maribeth Pierlott ("Pierlott") (Administrative Director of Patient Experience for Stratford), Diane Juliano, Valerie Nerenberg, and Heather Schwan, discussing plans to "get rid of" her.

4

**Deleted:** 18.

**Deleted:** 4

**Deleted:** Jefferson Health's

**Deleted:** Department

**Deleted:** 5

**Deleted:** 6

**Deleted:** Jefferson Health's

**Deleted:** Department

**Deleted:** 7

**Deleted:** 18

**Deleted:** 19

**Deleted:** 0

23. Romano experienced increasing isolation and exclusion from meetings.

24. On October 31, 2023, Romano's boss resigned and McBee sent her a text that said, "let me know when you are ready to talk."

25. Romano spoke with McBee later in the day and he told her that he would be "managing [her] future with Jefferson."

26. On January 17, 2024, Romano learned about reporting to Dr. David May ("May") during a public meeting.

**The March 2024 Zoom Meeting on the Proposed Patient Experience Position**

27. In March 2024, Romano participated in a Zoom meeting with Bridget Feery ("Feery") in Human Resources, May, Ken Bishop (Administrative Director of Patient Experience for Cherry Hill), Pierlott, and Rodney Benson (Administrative Director of Patient Experience for Washington Township).

28. During this meeting, there was discussion about creating a patient experience position to align with the Enterprise.

29. During this meeting, no one told Romano that her position was being eliminated.

30. Because Romano's position as Regional Director Service Excellence did not involve patient experience responsibilities, she had no reason to believe her job was in jeopardy.

| Deleted: 1 |
| Deleted: 2 |
| Deleted: 3 |
| Deleted: 4 |
| Deleted: 5 |
| Deleted: 6 |
| Deleted: e |
| Deleted: 7 |
| Deleted: 28 |

31.    Following the meeting, Romano contacted May and asked him what the new patient experience position had to do with her. May told her they did not know what things would look like, but that Romano might lose her responsibility for guest services.

32.    Following the meeting, Romano also reviewed the requirements for the new patient experience position and the duties were not the same as her duties.

### Romano Takes FMLA Leave

33.    About a week later, in March 2024, Romano experienced severe stress-induced medical symptoms requiring emergency medical attention.

34.    Romano took a 12-week FMLA leave due to severe stress-induced health issues including anxiety, migraines, vertigo, and cardiovascular symptoms.

35.    During Romano's FMLA leave, Feery contacted her and asked if she was interested in a new role in patient experience.

36.    Romano was in no condition to consider another position due to her medical condition and let Feery know she could not even think about it.

37.    Feery did not tell Romano that her job was in jeopardy or that her position was being eliminated.

6

Deleted: 29

Deleted: 0

Deleted: 1

Deleted: 2

Deleted: 3

Deleted: 4

Deleted: 5

**The New Enterprise Director of Patient Experience
and Guest Services Position**

38.    In or around March 2024, Defendants created a new position titled "Director of Patient Experience and Guest Services." The official job description for this position expressly lists the Division as "Enterprise" and states that the role receives support from the Enterprise Chief Experience Officer.

39.    While Romano was on FMLA leave, Maribeth Pierlott was selected for this new Enterprise-level position and Defendants announced Pierlott as new Director of Patient Experience and Guest Services.

40.    Romano was informed that, upon her return from FMLA leave, she would report to Pierlott.

**Romano's Constructive Discharge**

41.    On June 10, 2024, Romano returned from FMLA leave.

42.    Upon return from leave on June 10, 2024, Romano found she had no job title, responsibilities, or reporting structure.

43.    Romano found that all of her teams and responsibilities had been reassigned to Pierlott.

44.    Romano saw Pierlott's new job description, which included all of Romano's job duties.

45.    Romano was left sitting in her office for three days with no duties.

7

Deleted: ¶
36. →

Deleted: Jefferson Health

46. Romano made repeated inquiries to Human Resources and leadership but was told only that roles were "being fleshed out."

47. On June 14, 2024, Romano resigned effective July 19, 2024.

48. Jefferson Health knowingly permitted conditions of discrimination or retaliation so intolerable that a reasonable person would feel compelled to resign.

49. Romano was constructively discharged due to retaliatory and discriminatory treatment.

**TJUH and JHNJ Acted as Joint Employers of Plaintiff**

50. At all relevant times, TJUH and JHNJ acted as joint or co employers of Plaintiff. TJUH operated as the parent and overarching "Enterprise" entity, with JHNJ functioning as its New Jersey operating division.

51. TJUH employed key decision-makers who exercised control over Plaintiff's day-to-day employment activities and the adverse actions at issue. Dwight McBee, Plaintiff's former superior who removed her from the grant process and directed other retaliatory conduct, was employed by TJUH as the Enterprise Chief Experience Officer.

52. TJUH maintained and enforced enterprise-wide policies that applied to and governed Plaintiff's employment with JHNJ, including the Code of Conduct, Non-Discrimination Policy, Equal Employment Opportunity Policy, and Legal Holds Policy. These policies applied to all TJUH and JHNJ employees alike.

53.     TJUH directed and controlled organizational restructuring and patient-experience/guest-services functions across the New Jersey hospitals, including the changes that affected Plaintiff's Regional Director role. Enterprise-level directives required that work be done at the Enterprise level.

54.     TJUH also maintained enterprise-level human resources oversight of Plaintiff's position. For example, Lisa Satteson and Cassandra Wright, Enterprise-level HR executives employed by TJUH, participated in decisions affecting Plaintiff's role and/or had authority to make decisions affecting Plaintiff.

55.     Defendants' organizational charts confirm this integrated structure. Enterprise-level functions oversee and direct the JHNJ divisional operations.

56.     Plaintiff reasonably believed she was employed by the Jefferson Health Enterprise operated by TJUH.

**Count I**
**Violation of CEPA**

57.     Romano repeats and realleges the preceding paragraphs as if set forth herein in their entirety.

58.     Defendants are each an "employer" within the meaning of CEPA, New Jersey's whistleblower law. N.J.S.A. 34:19-2(a).

59.     Under CEPA, employers are barred from retaliating against an employee on the basis that the employee has engaged in the following activity:

9

Deleted: 46

Deleted: 47
Deleted: Jefferson Health
Deleted:  is

Deleted: 48

Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believed (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, (2) is fraudulent or criminal, or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment. N.J.S.A 34:19-3.

60.    In raising compliance concerns about inappropriate language and vendor relationships in a grant application to TJUH's Office of Legal Affairs, Romano engaged in whistleblowing conduct within the meaning of N.J.S.A. 34:19-3.

61.    In taking the adverse actions against Romano detailed above in this Complaint, including constructively discharging Romano, Jefferson Health unlawfully retaliated against Romano for her having engaged in whistleblowing activity within the meaning of N.J.S.A. 34:19-3.

62.    As a direct and proximate result of Defendants' violations of CEPA, Romano has suffered a loss of wages and benefits and emotional distress damages.

63.    Defendants' conduct was outrageous, willful and wanton, and given the willful indifference and actual participation by Defendants' upper management in the alleged retaliation against Romano, the imposition of punitive damages against Defendants is warranted.

10

**Deleted:** 49

**Deleted:** Jefferson Health'sDefendants'

**Deleted:** Department

**Deleted:** 50

**Deleted:** 51

**Deleted:** Jefferson Health's

**Deleted:** 52

**Deleted:** Jefferson Health's

**Deleted:** Jefferson Health's

**Deleted:** Jefferson Health

**Count II**
**Violation of the LAD (Disability Discrimination)**

64.    Romano repeats and realleges the preceding paragraphs as if set forth herein in their entirety.

65.    At all relevant times, Romano was disabled under the LAD due to anxiety, which substantially limits one or more major life activities, such as working, concentrating, or interacting with others.

66.    At all relevant times, Romano was disabled under the LAD because Defendants regarded her as disabled, or Romano had a record of a disability.

67.    In constructively discharging Romano, Defendants discriminated against her based on her disability in violation of the LAD.

68.    By engaging in the above-referenced conduct, Defendants violated Romano's right to be free of disability discrimination in violation of the LAD.

69.    As a direct and proximate result of Defendants' violations of the LAD, Romano has suffered a loss of wages and benefits and emotional distress damages.

70.    Defendants' conduct was outrageous, willful and wanton, and given the willful indifference and actual participation by Defendants' upper management in the alleged retaliation against Romano, the imposition of punitive damages against Defendants is warranted.

11

**Count III**
**Violation of the LAD (Retaliation)**

71.    Romano repeats and realleges the preceding paragraphs as if set forth herein in their entirety.

72.    As averred above, Romano engaged in protected activity when she requested a reasonable accommodation for her disability, which was a medical leave of absence.

73.    As averred above, upon return from leave on June 10, 2024, Romano found she had no job title, responsibilities, or reporting structure.

74.    As averred above, on June 14, 2024, Defendants constructively discharged Romano.

75.    Defendants retaliated against Romano for engaging in protected activity.

76.    By engaging in the above-referenced conduct, Defendants violated Romano's right to be free of retaliation in violation of the LAD.

77.    As a direct and proximate result of Defendants' violation of the LAD, Romano has suffered a loss of wages and benefits and emotional distress damages.

78.    Defendants' conduct was outrageous, willful and wanton, and given the willful indifference and actual participation by Defendants' upper management in the alleged retaliation against Romano, the imposition of punitive damages against Defendants is warranted.

12

Deleted: 60

Deleted: 61

Deleted: 62

Deleted: 63
Deleted: Jefferson Health

Deleted: 64
Deleted: Jefferson Health

Deleted: 65
Deleted: Jefferson Health

Deleted: 66
Deleted: Jefferson Health's

Deleted: 67
Deleted: Jefferson Health's
Deleted: Jefferson Health's

Deleted: Jefferson Health

**Count IV**
**Violation of the FMLA (Interference)**

79.    Romano repeats and realleges the preceding paragraphs as if set forth herein in their entirety.

80.    Romano was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

81.    Romano took time off from working with Defendants, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C. § 2611(2)(i).

82.    Romano had at least 1,250 hours of service with Defendants during her last full year of employment (pre-FMLA request).

83.    Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

84.    Romano was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

85.    As averred above, on June 10, 2024, Romano returned from FMLA leave.

Deleted: 68

Deleted: 69

Deleted: 70

Deleted: Jefferson Health

Deleted: 71

Deleted: Jefferson Health

Deleted: 72

Deleted: Jefferson Health is

Deleted: 73

Deleted: 74

86.     As averred above, upon return from leave on June 10, 2024, Romano found she had no job title, responsibilities, or reporting structure.

87.     As averred above, Romano found that all of her teams and responsibilities had been reassigned to Pierlott.

88.     As averred above, Romano was left sitting in her office for three days with no duties.

89.     As averred above, Romano made repeated inquiries to Human Resources and leadership but was told only that roles were "being fleshed out."

90.     As averred above, on June 14, 2024, Defendants constructively discharged Romano.

91.     Defendants interfered with Romano's exercise of her right to FMLA leave by failing to reinstate her to the same or an equivalent position upon her return from FMLA leave.

92.     As a direct and proximate result of Defendants' violation of the FMLA, Romano has suffered a loss of wages and benefits and emotional distress damages.

93.     Defendants' violation was not committed in good faith and it did not have objectively reasonable grounds to believe its actions did not violate the FMLA.

14

Deleted: 75
Deleted: 76
Deleted: 77
Deleted: 78
Deleted: 79
Deleted: Jefferson Health
Deleted: 80
Deleted: Jefferson Health
Deleted: 81
Deleted: Jefferson Health's
Deleted: 82
Deleted: Jefferson Health's
Deleted: ¶
Deleted: ¶

**Count V**
**Violation of the FMLA (Discrimination/Retaliation)**

94.    Romano repeats and realleges the preceding paragraphs as if set forth herein in their entirety.

95.    Romano was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

96.    Romano took time off from working with Defendants, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C. § 2611(2)(i).

97.    Romano had at least 1,250 hours of service with Defendants during her last full year of employment (pre-FMLA request).

98.    Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

99.    Romano was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

100.    As averred above, on June 10, 2024, Romano returned from FMLA leave.

| Deleted: 83 |
| Deleted: 84 |
| Deleted: 85 |
| Deleted: Jefferson Health |
| Deleted: 86 |
| Deleted: Jefferson Health |
| Deleted: 87 |
| Deleted: Jefferson Health is |
| Deleted: 88 |
| Deleted: 89 |

15

101. As averred above, upon return from leave on June 10, 2024, Romano found she had no job title, responsibilities, or reporting structure.

102. As averred above, Romano found that all of her teams and responsibilities had been reassigned to Pierlott.

103. As averred above, Romano was left sitting in her office for three days with no duties.

104. As averred above, Romano made repeated inquiries to Human Resources and leadership but was told only that roles were "being fleshed out."

105. As averred above, on June 14, 2024, Defendants constructively discharged Romano.

106. Defendants discriminated and/or retaliated against Romano by constructively discharging her after she exercised her FMLA rights.

107. As a direct and proximate result of Defendants' violation of the FMLA, Romano has suffered a loss of wages and benefits and emotional distress damages.

108. Defendants' violation was not committed in good faith and it did not have objectively reasonable grounds to believe its actions did not violate the FMLA.

**Deleted:** 90

**Deleted:** 91

**Deleted:** 92

**Deleted:** 93

**Deleted:** 94

**Deleted:** Jefferson Health

**Deleted:** 95

**Deleted:** Jefferson Health

**Deleted:** 96

**Deleted:** Jefferson Health's

**Deleted:** 97

**Deleted:** Jefferson Health's

**Requested Relief**

WHEREFORE, Plaintiff Christina Romano demands judgment against Defendants Jefferson University Hospitals, Inc. d/b/a Jefferson Health and Kennedy University Hospital, Inc. d/b/a Jefferson Health New Jersey and respectfully requests this Court to:

(1)    Issue a Declaratory Judgment declaring that Defendants' actions as set forth in this Complaint are unlawful and violate CEPA, the LAD, and the FMLA.

(2)    Issue equitable/injunctive relief including:

(a)    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their officers, agents, employees, and those acting in participation with Defendants, from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of CEPA, the LAD, and the FMLA.

(b)    Order Defendants to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under the CEPA, the LAD, and the FMLA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

(c)    Order Defendants to electronically deliver to its employees a copy of the jury verdict and trial court judgment.

17

| Deleted: Jefferson Health's |
| Deleted: Jefferson Health |
| Deleted: its |
| Deleted: Jefferson Health |
| Deleted: Jefferson Health |
| Deleted: Jefferson Health |

(d)    Order Defendants to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under CEPA, the LAD, and the FMLA—with the reporting specifics to be tailored based on the evidence.

(e)    Order Defendants to reinstate Romano upon such terms and conditions as will put her in the position she would have occupied had Defendants not unlawfully discriminated and retaliated against her.

(3)    Enter judgment in favor of Romano and against Defendants for back pay, including wages and fringe benefits.

(4)    Enter judgment in favor of Romano for front pay in lieu of reinstatement.

(5)    Enter judgment in favor of Romano and against Defendants for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

(6)    Enter judgment in favor of Romano and against Defendants for punitive damages, as allowable by law.

(7)    Enter judgment in favor of Romano and against Defendants for liquidated damages, as allowable by law.

(8)    Award Romano reasonable attorney's fees together with the costs of this action.

18

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

**Deleted:** Jefferson Health

(9)    Award Romano pre-judgment and post-judgment interest.

(10)    Enter judgment in favor of Romano for any other monetary losses as a direct result of Defendants' violations of CEPA, the LAD, and the FMLA, including but not limited to negative tax consequence damages.

(11)    Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Romano's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

**Jury Demand**

Plaintiff hereby demands a jury to try all claims triable by jury.

Respectfully submitted,

Dated: March 9, 2026                 /s/ Stephanie J. Mensing
                                     Stephanie J. Mensing
                                     NJ Bar No. 010752002
                                     Mensing Law LLC
                                     1515 Market Street, Suite 1200
                                     Philadelphia, PA 19102
                                     (215) 586-3751; (215) 359-2741 fax
                                     stephanie@mensinglaw.com

                                     Attorney for Plaintiff

19

**Deleted:** Jefferson Health's

**Deleted: Initial Request for Insurance Information**¶
Jefferson Health is hereby requested to provide copies of insurance that may provide coverage that claims and causes of action contained in this Complaint.¶

**Deleted:** Pursuant to R. 1:8-1 and 4:35-1, Romano demands a trial by jury of any issue triable of right by a jury.…¶
**Designation of Trial Counsel**¶
Pursuant to R.4:25-4, Romano designates Stephanie J. Mensing as trial counsel in this matter.¶
Pursuant to R.4:25-4, Romano designates Stephanie J. Mensing as trial counsel in this matter.¶
**Certification Pursuant to R. 1:38-7(c)**¶
I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).¶
I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).¶
**Certification Pursuant to R. 4:5-1**¶
→ Romano, by her attorney, hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding. Romano is not currently aware of any other party that should be joined in this action.¶

**Deleted: Designation of Trial Counsel**¶
Pursuant to R.4:25-4, Romano designates Stephanie J. Mensing as trial counsel in this matter.¶
Pursuant to R.4:25-4, Romano designates Stephanie J. Mensing as trial counsel in this matter.¶
**Certification Pursuant to R. 1:38-7(c)**¶
I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).¶
I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).¶
**Certification Pursuant to R. 4:5-1**¶
→ Romano, by her attorney, hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding. Romano is not currently aware of any other party that should be joined in this action.¶

**Deleted: Mensing Law LLC**¶
¶
¶
¶
Dated: June 11, 2025→ → →
→ → _____¶
→ Stephanie J. Mensing¶
→ Stephanie J. Mensing¶
Attorney for Plaintiff